NUMBER 13-04-205-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                      

NATIONAL UNION FIRE 
INSURANCE COMPANY OF 
PITTSBURGH, PA., ET AL.,                                Appellants,

v.

VALERO ENERGY CORPORATION, ET AL.,                            Appellees.
                                                                                                                                      

On appeal from the 398th District Court of Hidalgo County, Texas.
                                                                                                                      

O P I N I O N

Before Justices Yañez, Rodriguez, and Garza 
Opinion by Justice Garza
          
          Appellants have filed an interlocutory appeal under civil practice and remedies code
section 15.003(c), arguing that the trial court erred by allowing the joinder and intervention
of appellees in a lawsuit brought against appellants by Valero Energy Company in Hidalgo
County. Specifically, appellants claim that appellees did not establish two of the four
statutory elements required for joinder and intervention: (1) an “essential need” to try their
claims in Hidalgo County and (2) that Hidalgo County is a “fair and convenient” venue. We
conclude that appellees have established these statutory elements and affirm the trial
court’s order allowing joinder and intervention. 
I. BackgroundThe litigation giving rise to this interlocutory appeal involves a suit for declaratory
judgment to establish the scope of a settlement agreement entered into by a group of
insurers and certain corporate policy holders. From 1987 to 1997, National Union Fire
Insurance Company of Pittsburgh, PA issued general liability policies to Ultramar, Inc. and
its subsidiaries. During roughly the same period of time, from 1987 to 1996, National
Union also issued general liability policies to Diamond Shamrock, Inc. and its subsidiaries. 
Then, in 1996, Ultramar merged with Diamond Shamrock, forming Ultramar Diamond
Shamrock Corporation (“UDSC”). Subsequently, from 1996 to 2001, National Union issued
umbrella policies to UDSC that covered all Ultramar and Diamond Shamrock entities. On
December 31, 2001, UDSC merged with Valero Energy Company. As a result of the
merger, several subsidiaries of UDSC became subsidiaries of Valero. These included
Ultramar, Diamond Shamrock Refining and Marketing Company, Ultramar Energy, Inc.,
and Ultramar Limited. 
          Numerous lawsuits have been brought against various UDSC-related entities since
the polices were issued by National Union. For purposes of this appeal, the most
significant of these lawsuits is pending against Diamond Shamrock in Hidalgo County.


 In
response to this suit, Valero, as Diamond Shamrock’s successor in interest, requested a
defense and indemnity under the policies issued to Diamond Shamrock by National Union. 
As discussed below, National Union ultimately denied coverage of this claim. 
          In addition to the suit against Diamond Shamrock, UDSC was named as a
defendant in several lawsuits involving, among other things, products liability claims arising
from UDSC’s use of a gasoline additive known as MTBE. Ultramar, Beacon Oil, and
Valero (as a successor in interest to UDSC) were also named as defendants in these suits. 
Again, the policyholders requested a defense and indemnity from National Union. 
          On June 12, 2003, National Union informed Valero and the UDSC entities that it was
not responsible for claims relating to the above-referenced suits. In its letter refusing to
provide coverage, National Union explained that a settlement agreement entered into by
certain UDSC entities (including Ultramar) in April 2000 provided for a policy “buyback” or
complete release of all claims on insurance policies issued to the Ultramar entities (with
certain exceptions not relevant to this case) by the Insurance Company of the State of
Pennsylvania (“ICSOP”), American Home Assurance Company, and AIG Technical
Services, Inc. (“AIGTS”). The letter explained that, as a carrier related to AIGTS, National
Union was released under the settlement agreement from covering policies it had issued
to the UDSC entities. Valero and the UDSC entities disagreed with this interpretation of
the settlement agreement. They maintained that the settlement agreement did not release
National Union from the policy claims. 
          On June 24, 2003, Valero and Ultramar filed suit in Hidalgo County against National
Union, ICSOP, American Home, and AIGTS for a declaratory judgment that the settlement
agreement did not encompass the insurance polices issued to the UDSC entities by
National Union. Three additional plaintiffs were subsequently allowed to intervene in the
suit: Diamond Shamrock Refining and Marketing Company, Ultramar Energy, and
Ultramar Limited. Each of the intervening plaintiffs is a UDSC entity and a subsidiary of
Valero. Each has been named as a defendant in the lawsuits mentioned above involving
the use of MTBE as a gasoline additive. As with the policy claims made by Valero and
Ultramar, National Union has relied on the settlement agreement to deny policy claims
made by each of the intervenors. Like Valero and Ultramar, the intervenors seek a
declaratory judgment that the settlement agreement does not release National Union from
responsibility for its policies. 
          The defendants subsequently filed a motion to transfer venue as to Valero on
grounds of improper venue and convenience. In addition, the defendants argued that the
claims brought by the four other plaintiffs, Ultramar, Diamond Shamrock Refining and
Marketing Company, Ultramar Energy, and Ultramar Limited, could not be heard in Hidalgo
County because these plaintiffs had failed to meet the statutory elements required for
joinder and intervention. The defendants asked the trial court to deny joinder and
intervention, to sever the claims brought by these four plaintiffs, and to transfer those
cases to Bexar County. 
          The trial court denied the defendants’ motion in its entirety, and this interlocutory
appeal by defendants (“appellants”) ensued under section 15.003(c) of the civil practice
and remedies code. Tex. Civ. Prac. & Rem. Code Ann. § 15.003(c).


 
II. Standard of Review
          A court of appeals must conduct a de novo review of the entire record to determine
whether a trial court’s section 15.003(a) joinder and intervention determinations were
proper. See id. § 15.003(a); Surgitek v. Abel, 997 S.W.2d 598, 603 (Tex. 1999). In
conducting this review, the court is not constrained solely to review the pleadings and
affidavits but should consider the entire record, including any evidence presented at the
hearing. Surgitek, 997 S.W.2d at 603. 
          The plaintiffs bear the burden to establish prima facie proof of each joinder and
intervention element. See id. at 602–03; Teco-Westinghouse Motor Co. v. Gonzalez, 54
S.W.3d 910, 913 (Tex. App.—Corpus Christi 2001, no pet.). All properly pleaded venue
facts are taken as true unless specifically denied by an opposing party. Blalock
Prescription Ctr., Inc. v. Lopez-Guerra, 986 S.W.2d 658, 662 (Tex. App.—Corpus Christi
1998, no pet.). If the defendants offer no rebuttal evidence, the inquiry is over, but if a
defendant’s joinder evidence rebuts the plaintiff’s prima facie proof, a trial court has
discretion to consider all available evidence to resolve any disputes that the parties’ proof
creates. Surgitek, 997 S.W.2d at 602–03.
III. Discussion
          Appellants claim that Ultramar, Diamond Shamrock Refining and Marketing
Company, Ultramar Energy, and Ultramar Limited ( “appellees”) did not meet their burden
of establishing all four elements for proper joinder or intervention under section 15.003(a). 
See Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a).


 Specifically, appellants argue that
appellees failed to establish (1) an “essential need” for their claims to be tried in Hidalgo
County and (2) that Hidalgo County is a “fair and convenient” venue. See id. §
15.003(a)(3), (a)(4). Because appellees have not argued to this Court or to the trial court
that they can establish proper venue in Hidalgo County independent of Valero, they must
satisfy the requirements of subdivisions (1) through (4) of section 15.003(a). See id. §
15.003(b)(1). Appellants, however, have only challenged joinder and intervention based
on subdivisions (3) and (4). Therefore, our review of the trial court’s joinder and
intervention determinations is limited to the requirements of those subdivisions. See
Teco-Westinghouse Motor Co., 54 S.W.3d at 914 (addressing only three of four elements
for joinder because appellant did not challenge first element).  
1. There Is an Essential Need for Appellees’ Claims to be Tried in Hidalgo County
          To prove an “essential need,” appellees were required to show a compelling reason
why their claims must be tried in Hidalgo County and not merely that they have an
“essential need” to join with other plaintiffs in order to pool resources. See Am. Home
Prods. Corp. v. Bernal, 5 S.W.3d 344, 348 (Tex. App.—Corpus Christi 1999, no pet.). 
          Appellees argue that they have an “essential need” to try their claims in Hidalgo
County because (1) their claims are virtually identical to the claim asserted in the pending
suit (i.e., Valero’s suit for declaratory judgment);


 (2) they are corporate entities related to
each other and to Valero, not separate individuals with separate injuries; (3) the declaratory
judgment act requires that they be made parties to Valero’s suit;


 (4) if they cannot join and
intervene in Valero’s suit, they will be nonetheless bound by its outcome on the basis of
collateral estoppel;


 and (5) even if collateral estoppel would not bar re-litigation of the
issue (i.e., whether the settlement agreement released National Union from liability on its
policies), failure to allow joinder and intervention creates the potential for inconsistent
judgments (i.e., judgments stating that the settlement agreement released National Union
from the policies would conflict with judgments stating that National Union was not released
from such policies). 
          Appellants contend that these arguments “completely miss the mark,” as they do not
prove anything more than that a lawsuit has been filed in Hidalgo County. This lawsuit,
according to appellants, does not create an “essential need” for appellees to try their claims
in Hidalgo County. Appellants suggest that appellees are simply trying to “tag-along” or
“piggy-back” on Valero’s suit because they have no independent connection to Hidalgo
County. Appellants also contend that the “essential need” requirement cannot be
established by the threat of collateral estoppel because Valero and appellees have the
option of transferring their claims to Bexar County, where, according to appellants, venue
is proper as to all parties.
          We disagree with appellants’ arguments and, for the reasons that follow, conclude
that appellees have established an “essential need” to try their claims in Hidalgo County. 
In their brief, appellants state that “whichever party were to lose on the substantive claims
. . . would face a strong argument for collateral estoppel in any later litigation.” We agree. 
Collateral estoppel likely will bar re-litigation of the sole issue involved in Valero’s suit
against appellants.


 According to appellants, however, this problem does not create an
“essential need” because appellees may object to collateral estoppel when it is actually
invoked in future litigation; there is no “essential need” to avoid the inconvenience of having
to make arguments against collateral estoppel in the future. 
          Although we agree that a desire for convenience does not constitute an “essential
need,” see Smith v. Adair, 96 S.W.3d 700, 707 (Tex. App.—Texarkana 2003, pet. denied),
we disagree that the problem created by collateral estoppel is merely an issue of
convenience. Appellees face a “Catch-22": to litigate the scope of the settlement
agreement, they must file separate suits, but if they file separate suits, collateral estoppel
most likely will bar them from litigating the scope of the settlement agreement. Appellees’
“essential need” is precisely to avoid this dilemma. If joinder and intervention are not
allowed, appellees may never get their day in court. Thus, their “essential need” is their
need to avoid the bar of collateral estoppel and to retain an opportunity to litigate the
settlement agreement. 
          Appellants maintain that such arguments are without merit because Valero could
transfer its case to Bexar County, where appellees could also establish proper venue. 
This, however, would force Valero to relinquish its choice of venue, which the trial court has
already upheld under direct attack. Thus, yet again, appellees have an option that is really
no option at all: they can join and intervene in Valero’s suit, but only if Valero transfers its
suit to appellants’ choice of venue, which Valero has already demonstrated it will not do. 
          Aside from presenting a largely illusory option for appellees, appellants’ argument
is fundamentally flawed: if sustained, it would eliminate altogether the possibility of ever
showing an “essential need.” A party opposing joinder or intervention could always argue
that there is no “essential need” because venue is proper in another county. By
hypothesis, a party seeking joinder or intervention under section 15.003 cannot
independently establish proper venue in the county of suit. Thus, there will always be, as
appellants argue, a different county in which venue is proper. This, however, does not
address the “essential need” to try claims in a county in which venue is not otherwise
proper. If the legislature meant to forbid joinder and intervention in cases such as this, it
could have repealed section 15.003. It has not done so. We will therefore not interpret
section 15.003 in a manner that renders it meaningless. 
          Further, even assuming, arguendo, that collateral estoppel will not prevent separate
suits by appellees, we would nevertheless conclude that they have established an
“essential need” because, without collateral estoppel, an undeniable possibility of
inconsistent judgments exists. For instance, if Valero were to lose its suit and appellees
were to win their suits, there would be no single interpretation of the settlement agreement. 
In Tex. Mut. Ins. Co. v. E. Side Surgery Ctr., Inc., Nos. 13-02-278-CV and 13-02-354-CV,
2004 Tex. App. LEXIS 6299 (Corpus Christi, July 15, 2004, no pet. h.), this Court
addressed the issue of whether an “essential need” had been established in a context very
similar to this appeal. Specifically, this Court held 

The entanglements between these three cases including the potential for
inconsistent rulings on certification, inconsistent judgments, and inconsistent
resulting obligations establishes an essential need to allow Appellees to join
suit in Cameron County. 
Id. at *13. 
          For reasons similar to those articulated in Tex. Mut. Ins. Co., we hold that appellees
have demonstrated an essential need to try their claims in Hidalgo County. If the suit in
Hidalgo County is allowed to go forward without appellees as plaintiffs, appellees could be
collaterally estopped from litigating the scope of the settlement agreement in their own
suits. They would thus be bound by a Hidalgo County judgment, even though they were
not allowed to participate in the case. Even if collateral estoppel would not bar their
individual suits, multiple lawsuits would create a possibility of inconsistent judgments and
therefore inconsistent resulting obligations regarding a single contract.
          For these reasons, we conclude that appellees have demonstrated an “essential
need” to try their claims in Hidalgo County. We overrule appellants’ first issue. 
2. Hidalgo County Is a Fair and Convenient Venue for All Parties. 
          In their second issue, appellants argue that joinder and intervention were improper
because appellees failed to prove that Hidalgo County is a “fair and convenient” venue for
all parties. See Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a)(4). Appellants, however,
have not challenged the “no unfair prejudice” element of section 15.003. See id. §
15.003(a)(2). This Court has held that evidence of “no unfair prejudice” also establishes
the “fair and convenient” element. See Teco-Westinghouse Motor Co., 54 S.W.3d at 918;
Blalock, 986 S.W.2d at 665; Surgitek, Inc. v. Adams, 955 S.W.2d 884, 891 (Tex.
App.—Corpus Christi 1997, pet. dism’d). Appellees argued to the trial court that there
would be “no unfair prejudice” to appellants because, regardless of whether joinder and
intervention were allowed, appellants will have to defend themselves in Hidalgo County on
the same contract and coverage issue and with the same witnesses. Because proof of “no
unfair prejudice” can establish that a venue is “fair and convenient” and because appellants
have not challenged appellees’ proof of “no unfair prejudice,” we hold that appellees have
established Hidalgo County as a “fair and convenient” venue. We overrule appellants’
second issue.  
Conclusion
          The order of the trial court is AFFIRMED.          _______________________
                                                                                      DORI CONTRERAS GARZA,
                                                                                      Justice

Opinion delivered and filed 
this the 25th day of August, 2004.